UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CONSULATE GENERAL OF INDIA
IN NEW YORK,

         Plaintiff,

   -v-

834 5TH AVENUE CORPORATION,

         Defendant.

---

24 Civ. 9913 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

  Plaintiff Consulate General of India in New York (the "Consulate") brings this action against 834 5th Avenue Corporation ("834 5th Avenue") to enforce its rights under an 1896 easement agreement. Its Amended Complaint ("AC"), Dkt. 17, pleads three causes of action: for (1) "declaration," (2) "injunction," and (3) "appropriate direction," *id.* ¶¶ 29–34. It does not plead that federal law is the source of any of those causes of action. It does not plead diversity jurisdiction. It does not plead that its state-law claims embed a federal issue sufficient to give rise to federal-question jurisdiction. And the Consulate, having been granted opportunities to amend its pleading, and specifically, to show that federal subject-matter jurisdiction exists, has not done so.

  For the following reasons, the Court dismisses this case for lack of subject-matter jurisdiction. That dismissal is without prejudice to refiling this action in state court or bringing a new one consistent with that jurisdictional requirement.

## I.   Background.[1]

### A.   Factual Overview

#### 1.   The 1896 Easement

On May 21, 1896, Helen and Henry Knickerbacker conveyed a building located at 3 East 64th Street, New York, NY 10065 (the "Consulate Building") to Caroline Schermerhorn Wilson by warranty deed. *Id.* ¶ 12. As alleged, the deed contained certain covenants and restrictions, to run with the land, *id.*, including an easement for air and light (the "1896 easement") between the Consulate Building and an adjacent building located at 834 5th Avenue, New York, NY 10065 (the "Corporation Building"), *id.* ¶ 13.

The AC alleges that, on an unspecified date between May 1896 and February 1930, the unidentified owners of the Corporation Building violated the terms of the 1896 easement by erecting a "10-foot-wide" wall in the area between the buildings. *Id.* On February 13, 1930, the AC alleges, the owners of the two buildings reached an agreement to the effect that the wall would not be deemed a violation of the covenants and restrictions (the "1930 agreement"). But, the AC alleges, this agreement did not otherwise alter, or effect a waiver of, the parties' rights under the 1896 easement. *Id.* ¶ 14.

At a later unspecified time, the Corporation Building owners allegedly built an iron gate, a "platform to descend to the basement of the building," and other structures behind the Consulate Building. *Id.* ¶ 15. The Corporation Building owners allegedly also made structural changes and installed HVAC, iron gates, sheds, and drainage systems. *Id.* The Corporation Building's owners possess the sole key to the easement between the buildings. *Id.*

---

[1] The facts in this section are all drawn from the AC, Dkt. 17. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

### 2. The Consulate's Planned Renovation

On November 16, 1948, the Consulate acquired the Consulate Building from an unidentified party. *Id.* ¶ 16. The building houses the Consul General of India, his family, and security personnel and serves as an office for more than 70 employees and visitors. *Id.* ¶¶ 16–17. Its only fire and emergency exits are through the main gate and a basement exit. *Id.* ¶ 17.

The AC alleges that the Consulate determined, on an unspecified date, that it requires access to the easement area between the Consulate Building and the Corporation Building in order to comply with the New York City Fire Code and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101. *See id.*

In or about December 2022, the Consulate finalized plans for a renovation, including construction of an allegedly ADA-compliant entryway through the existing iron gate behind the Consulate Building, which is today owned by 834 5th Avenue. *Id.* ¶ 20. 834 5th Avenue, however, withheld its consent to the proposed renovation, taking the position that the Consulate did not have the right to build in the easement area and citing the 1930 Agreement. *Id.* ¶ 21. The parties have since exchanged a series of letters and proposals, but have failed to reach an agreement as to the Consulate's planned renovation. *Id.* ¶¶ 25–28.

### B. Procedural History

On December 23, 2024, the Consulate filed the Complaint, seeking declaratory and injunctive relief under the 1896 easement,[2] Dkt. 1; it appended a copy of a document entitled "covenants and restrictions," dated May 21, 1896, as an exhibit, Dkt. 1-2. On March 3, 2025, 834 5th Avenue moved to dismiss the Complaint, for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6). Dkt. 12. On March 4, 2025, the Court directed the Consulate, by

---

[2] The Complaint also seeks "appropriate direction to defendants," which it styles as a third cause of action.

March 24, 2025, to file any amended complaint or opposition to the motion. Dkt. 14. On March 27, 2025, the Consulate filed the AC. Dkt. 17.

On April 14, 2025, 834 5th Avenue moved to dismiss the AC under Rule 12(b)(6). Dkt. 20. On May 28, 2025, the Consulate opposed. Dkt. 23. On June 12, 2025, 834 5th Avenue replied. Dkt. 24.

On July 9, 2025, the Court, upon its review of the AC, *sua sponte*, directed the Consulate to show cause why this action should not be dismissed for lack of federal subject-matter jurisdiction. Dkt. 26 ("OTSC"). It was not apparent, the Court explained, that the Consulate had pled facts or raised claims sufficient to supply this Court with subject-matter jurisdiction. *See id.* at 2. On July 16, 2025, the Consulate filed a response, in which it cited Article III, § 2 of the U.S. Constitution and the AC's reference to the ADA as bases for jurisdiction. Dkt. 27 ("Pl. Resp.").[3]

## II.   Discussion

It is a bedrock principle that federal courts are "courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Their jurisdiction is "[l]imited first by the Constitution, to only the kinds of 'Cases' and 'Controversies' listed in Article III. And for all lower federal courts, limited as well by statute." *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025). Thus, under 28 U.S.C. §§ 1331 and 1332, the principal statutory bases of jurisdiction, federal courts exercise jurisdiction "only when a federal question is presented, or if asserting state-law claims under the court's diversity jurisdiction, when the plaintiff and the defendants are citizens of different states [or meet one of § 1332's other bases for party diversity] and the amount in controversy exceeds the sum or value of $75,000." *Jia v. Weee! Inc.*, No. 24

---

[3] On July 21, 2025, 834 5th Avenue submitted a letter declining to take a position as to the existence of subject-matter jurisdiction. Dkt. 28 ("Def. Resp.").

4

Civ. 534 (PAE), 2025 WL 486940, at *2 (S.D.N.Y. Feb. 13, 2025); *see* 28 U.S.C. § 1332(a)(1)–(4).

It is also black-letter law that "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). And "a district court *must* dismiss an action whenever it determines that it lacks subject-matter jurisdiction." *Behrens v. JPMorgan Chase Bank, N.A.*, 96 F.4th 202, 207 (2d Cir. 2024) (citing Fed. R. Civ. P. 12(h)(3)) (emphasis added).

Critical here, as the party invoking federal jurisdiction, the Consulate bears the "burden of showing that subject-matter jurisdiction exists." *Collins v. United States*, 996 F.3d 102, 108 (2d Cir. 2021); *see also Fenstermaker v. Obama*, 354 F. App'x 452, 454 (2d Cir. 2009) (same). The Court's "determination of jurisdiction is based only on the allegations" in the AC. *Royal Canin*, 604 U.S. 22 at 26. And "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)).

The Consulate has not carried that burden, for three reasons.

*First*, the Consulate misapprehends the multiple limits on the subject-matter jurisdiction of the lower federal courts. In response to the Court's OTSC, the Consulate principally argues that Article III, § 2 of the Constitution alone supplies a sufficient basis for this Court to exercise

5

subject-matter jurisdiction.[4] Pl. Resp. at 2. But lower federal courts "possess only that power authorized by Constitution *and* statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (emphasis added); *see also Kontrick v. Ryan*, 540 U.S. 443, 452 (2004) ("Only Congress may determine a lower federal court's subject-matter jurisdiction."); *Royal Canin*, 604 U.S. at 26 (subject-matter jurisdiction "for all lower federal courts" is "limited as well by statute"); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 372 (1978) ("[T]he jurisdiction of the federal courts is limited not only by the provisions of Art. III of the Constitution, but also by Acts of Congress."). And, for the reasons that immediately follow, the AC does not plausibly plead that this case falls within a statutory grant of jurisdiction.

*Second*, the AC does not plausibly allege federal-question jurisdiction under 28 U.S.C. § 1331. That provision authorizes "federal courts to decide cases founded on federal law." *Royal Canin*, 604 U.S. 22 at 26. Consequently, subject-matter jurisdiction under § 1331 exists "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Here, the AC does not present a federal question. The AC pleads three causes of action—for (1) "declaration," (2) "injunction," and (3) "appropriate direction," AC ¶¶ 29–34—but it does *not* plead that federal law gives rise to any of those causes of action, *see, e.g., In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993) ("The Declaratory Judgment Act does not expand jurisdiction. Nor does it provide an independent cause of action. Its operation is procedural only—to provide a form of relief previously unavailable." (citing *Skelly Oil Co. v. Phillips Petroleum* Co., 339 U.S. 667, 671–72 (1950))); *Malloy v. EMI Christian Music Grp., Inc.*, No. 11 Civ. 6075, 2012

---

[4] Insofar as the Consulate's response invokes this Court's jurisdiction over "criminal cases," Pl. Resp. at 2, it is mistaken: This is a civil case.

WL 13388992, at *4 (S.D.N.Y. May 16, 2012) (Sullivan, J.) ("Injunctions are a form of remedy and not a separate cause of action."). None of the AC's causes of action identifies the substantive law under which the Consulate is entitled to relief. On the Court's review, they approximate causes sounding in state property law, not federal law.

The AC's passing reference to the ADA does not bring this case within the "special and small category" of cases where state law claims embedding federal questions can give rise to federal-question jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 259 (2013). "Federal issue" is not "a password opening federal courts to any state action embracing a point of federal law." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). As support for its claim under the 1896 easement agreement, the AC recites *the Consulate*'s obligations under the ADA, which, it alleges, require it to undertake the disputed renovation. *See* AC ¶ 17. But it does not allege that *834 5th Avenue* has violated the ADA in any way, or that the Consulate has a claim under that statute against 834 5th Avenue. *Cf.* 42 U.S.C. § 12188(a)(1) (supplying a private cause of action to individuals subject to discrimination based on their disability). Therefore, the AC's reference to the ADA does not transform this quotidian property dispute into a federal case.[5] And, in any event, the Consulate does not even attempt to plead federal jurisdiction over the AC's state law claims under the governing *Grable-Gunn* framework. That framework requires a showing that an embedded federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting

---

[5] For that reason, the Consulate's claim that this action "may not be adjudicated by the state courts" is baseless. Pl. Resp. at 4. State courts can, and routinely do, adjudicate disputes respecting parties' rights under easement agreements. *See, e.g., Daniello v. Wagner*, 200 N.Y.S. 3d 423 (2d Dep't 2023) (resolving easement dispute between neighbors); *Highland Meadows Senior Hous. Dev. Fund Co., Inc. v. Westchester Cnty. Health Care Corp.*, 211 N.Y.S. 3d 106 (2d Dep't 2024) (same); *Fenton v. Floce Holdings, LLC*, 217 N.Y.S.3d 98 (2d Dep't 2024); *Ryan v. Posner*, 892 N.Y.S.2d 439 (2d Dep't 2009) (same).

the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 259 (2013). The Consulate does not argue that *any* of those four required elements are met.[6]

*Third*, the AC nowhere alleges the existence of diversity jurisdiction under 28 U.S.C. § 1332(a), or facts that could support such. Section 1332 "requir[es] that the parties be diverse and that the amount in controversy exceed $75,000." *Correspondent Servs. Corp. v. First*

---

[6] "Judges are not like pigs, hunting for truffles buried in briefs," *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991), and the Consulate's submissions do not raise a *Grable-Gunn* argument in the slightest. The Court nonetheless has undertaken an independent review of that question. It confirms that, for multiple independent reasons, the AC's allegations do not satisfy the *Grable-Gunn* test. To satisfy its first prong, a claim must "necessarily depend on resolution of a . . . question of federal law." *Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 141 (2d Cir. 2021) (citation omitted). The AC alleges that the Consulate's planned renovation is necessary for it to comply with the ADA. *See* AC ¶ 28. But 538 5th Avenue has not contested that the Consulate is obliged to comply with ADA or the scope of its obligations. *See* Def. Resp.; *see also* Pl. Resp. at 2–3. Consequently, the Consulate's claims do not implicate *any* dispute respecting the ADA, much less "necessarily depend" on such. And "'the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction.'" *AMTAX Holdings 227, LLC v. CohnReznick LLP*, 136 F.4th 32, 38 (2d Cir. 2025) (quoting *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986)); *see also, e.g.*, *Kennedy v. UnitedHealth Grp.*, No. 25 Civ. 432 (PAE), 2025 WL 1725147, at *5 (S.D.N.Y. June 20, 2025) ("[T]he AC, read with a focus on what necessarily appears in the plaintiff's statement of his own claim, does not necessarily raise a federal question." (citation omitted)).

The AC likewise fails the third prong of the *Grable-Gunn* test, which requires that the federal issue be "substantial." *Grable*, 545 U.S. at 313. "An issue tends to be substantial if it is 'a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous [similar] cases.'" *Tantaros*, 12 F.4th at 145 (quoting *Empire Healthchoice*, 547 U.S. at 700). Here, the AC's reference to "the ADA serves, at most, . . . an evidentiary role supporting the" state-law claims, so "the federal issue raised is insufficiently substantial." *Ormsten v. KIOP Merrick, LP*, No. 22 Civ. 4086, 2022 WL 6162612, at *2 (E.D.N.Y. Oct. 7, 2022). And even assuming *arguendo* that the AC raised a dispute issue as to the Consulate's obligations under the ADA—which it does not—determination of such would be fact-bound and party-specific.

Finally, the AC fails the fourth *Grable-Gunn* factor. The ADA does not supply a cause of action for property disputes between neighbors, an "important" signal that Congress intended to preserve the primacy of state courts in resolving such disputes. *Grable*, 545 U.S. at 318; *see also Gunn*, 568 U.S. at 264 ("It follows from the foregoing [lack of substantiality] that *Grable*'s fourth requirement is also not met.").

8

*Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006). The AC does not cite § 1332 as a jurisdictional basis. *Compare* AC ¶¶ 5–8 *et passim*, *with, e.g., Loughlin v. United States*, 393 F.3d 155, 172 (D.C. Cir. 2004) ("Diversity jurisdiction must be pleaded by the party claiming it."). Nor does it allege the requisite amount in controversy: It does not claim damages or plead the value of the injunctive and declaratory relief it seeks. *See Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) ("A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount."); *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."). Here, the "object of the litigation" is the Consulate's right to undertake, as pled, a modest renovation over a neighbor's objection. *See* AC ¶¶ 18–22 (asserting "right to build" an entrance in a "10-foot-wide easement area"). The AC, having eschewed reliance on diversity jurisdiction, does not allege, much less support a "reasonable probability," that the value of that right exceeds $75,000. *See DiTolla v. Doral Dental IPA of New York*, 469 F.3d 271, 277 (2d Cir. 2006) ("mere speculation" not enough to satisfy statutory jurisdictional amount).

In sum, diversity jurisdiction does not exist for two independent reasons: (1) the AC has not affirmatively pled it, and (2) it has not alleged that the value of the relief it seeks exceeds the statutory jurisdictional minimum. *Id.* at 276 (affirming dismissal for lack of subject-matter jurisdiction where complaint seeking only equitable relief did not "specif[y] an amount alleged to be in controversy" and its allegations "shed little additional light"); *Smulley v. Safeco Ins. Co. of Ill.*, No. 21-2124-cv, 2022 WL 16753118, at * 1–2 (2d Cir. Nov. 8, 2022) (no diversity jurisdiction where complaint's allegations did not support a "reasonable probability" that the

9

value of the object of the litigation exceeded $75,000); *Parker v. Riggio*, No. 10 Civ. 9504, 2012 WL 3240837, at *8 (S.D.N.Y. Aug. 6, 2012) (same); *Swift Logistics Inc. v. M & J Trucks Sales Inc.*, No. 22 Civ. 1393, 2022 WL 17177791, at *3 (E.D.N.Y. Nov. 23, 2022) (same).

Accordingly, the Consulate has not met its burden to show that subject-matter jurisdiction exists.

## CONCLUSION

For the foregoing reasons, the Court *sua sponte* dismisses this action for lack of subject-matter jurisdiction.[7] The dismissal is without prejudice to refiling this action in state court or bringing a new one consistent with federal subject matter jurisdiction. In light of this holding, the Court denies 834 5th Avenue's motion to dismiss as moot.

The Court respectfully directs the Clerk of Court to terminate all pending motions and to close this case.

---

[7] The Consulate has not sought leave to amend. The Court finds that, insofar as the Consulate was given the opportunity to amend its complaint and specific notice of the jurisdictional deficiency, but failed to cure it, granting leave to amend is "unlikely to be productive," warranting dismissal. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (per curiam) ("Where it appears that granting leave to amend is unlikely to be productive, it is not an abuse of discretion to deny leave to amend." (cleaned up)); *see also, e.g., Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (denying plaintiffs "another bite at the proverbial apple" where plaintiffs was "informed of the deficiencies in the complaint and then an opportunity to cure those deficiencies," yet did not do so (cleaned up)); *Mitchell v. New York*, No. 23-705, 2024 WL 319106, at *2 (2d Cir. Jan. 29, 2024) ("district court did not err when denying [plaintiff's] motion to amend the complaint" insofar as, *inter alia*, plaintiff "has already amended his complaint on one prior occasion"); *Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009) ("[I]t is within the sound discretion of the district court to grant or deny leave to amend.").

SO ORDERED.

                                                 *Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: July 25, 2025
      New York, New York

11